UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | CASE NO. 1:10-cv-00115 |
| v. | |
| STEVEN W. SALUTRIC, | |
| Defendant. | JURY DEMANDED |

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("SEC"), alleges as follows:

## NATURE OF THE ACTION

1. This matter centers on a fraudulent scheme in which Steven W. Salutric ("Salutric"), from at least 2007 through the present, acting as an investment adviser, misappropriated at least $1.8 million – and potentially over $2 million – from at least 17 of his clients to support businesses and entities linked to him and, as part of a Ponzi scheme, to make payments to other clients. As an investment advisor, Salutric owed a fiduciary duty to his clients. In a particularly egregious example of Salutric's fraudulent conduct, Salutric misappropriated over $400,000 from a 96-year-old client who resides in a nursing home and suffers from dementia.

2. In addition to the clients whom the SEC has determined Salutric has defrauded, Salutric has been managing investments of more than 100 clients, involving assets of over $16 million, since 2000. Most of these clients are individuals or small businesses. It is thus possible

that the amount of misappropriated funds and the number of defrauded clients may even be greater.

3. Salutric misappropriated client funds by making unauthorized withdrawals from his clients' accounts at Charles Schwab & Co., Inc. ("Schwab"), which serves as the custodian of clients assets for Results One. Pursuant to investment advisory agreements with Results One clients, Salutric and other "investment advisory representatives" at Results One had discretionary authority to trade in the Schwab accounts without prior approval from the clients. Such trades typically involved the purchase and sale of mutual fund shares.

4. Results One and its investment advisors, including Salutric, did not have discretionary authority to withdraw funds from client accounts at Schwab. In fact, Results One, through its written investment advisory agreements with its clients, specifically assures clients that "Results One will not have the authority to withdraw your funds other than to buy or sell securities within the account."

5. Further, in connection with accounts managed by investment advisers, Schwab's internal procedures forbid disbursements of funds to third parties unless Schwab receives written requests from the investment advisor client. Thus, to perpetrate his scheme, in a number of instances, Salutric forged client signatures on written withdrawal request forms and submitted the signed written requests to Schwab.

6. Once client funds were withdrawn from Schwab, Salutric directed the funds to a number of entities related to Salutric including: approximately $259,000 to two local restaurants (one of which is partially owned by Salutric); approximately $610,000 to a film distribution company (Salutric previously co-produced a film with links to this company); and approximately $321,000 to Salutric's church (Salutric is the treasurer and has signatory authority over the

church's bank account). Many of the clients were not aware that their funds were transferred to these entities. Most, if not all, of the other misappropriated funds were used in a Ponzi-like fashion to pay other clients.

7. Through the activities alleged in this complaint, Defendant Salutric has, and unless enjoined, will continue to, directly and indirectly, engage in transactions, acts, practices or courses of business which are violations of Section 10(b) [15 U.S.C. § 78j(b)] of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder, and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 (the "Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

8. The SEC brings this action pursuant to Sections 21(d) and (e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] and Section 209(d) of the Advisers Act [15 U.S.C. §§ 80b-9(d)]

## JURISDICTION

9. This Court has jurisdiction pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] and Section 214 of the Advisers Act [15 U.S.C. § 80b-14], and 28 U.S.C. § 1331.

10. The acts, practices and courses of business constituting the violations alleged herein occurred within the jurisdiction of the United States District Court for the Northern District of Illinois and elsewhere.

11. Defendant Salutric is an inhabitant of, and transacts business in, the Northern District of Illinois.

12. Defendant Salutric, directly or indirectly, has made, and is making, use of the mails or the means or instrumentalities of interstate commerce in connection with the transactions, acts, practices and courses of business alleged herein.

**DEFENDANT**

13.     Steven W. Salutric, age 51, is a resident of Carol Steam, Illinois. In 2000, Salutric cofounded the investment advisory firm Results One Financial, LLC. Salutric owns about 44% of Results One and is the largest shareholder of the firm. On the firm's website, Salutric identifies himself as CPA with a specialty in business consulting for privately held businesses and their owners. Until recently, Salutric was also identified as an investment advisory representative having obtained his Series 65 license in 2003. Salutric has also been involved in the film industry; he was an executive producer of a 2005 a movie titled "Madison."

**OTHER RELEVANT PARTIES**

14.     Results One Financial, LLC is an Illinois Limited Liability Company located in Elmhurst, Illinois, that has been registered with as an investment adviser since September 21, 2000. As of November 2009, Results One had over 1000 clients with over $160 million in assets under management.

**FACTS**

**SALUTRIC MISAPPROPRIATED CLIENT FUNDS**

15.     From approximately 2007 through 2009, Salutric misappropriated at least $1.8 million from at least 17 of his clients at Results One. Results One is an investment advisory firm that mostly places its clients in a variety of brand name mutual funds. Until recently, Salutric was also an investment advisory representative of the firm.

16.     Client funds at Results One are held by Schwab which serves as Result One's custodian of client funds. Pursuant to investment advisory agreements with Results One clients, Salutric and other "investment advisory representatives" at Results One had discretionary

4

authority to trade in the Schwab accounts without prior approval from the clients. Such trades typically involve purchase and sale of mutual fund shares.

17. Results One did not have discretionary authority to withdraw funds from client accounts at Schwab. The form investment advisory agreement that the firm executes with all of its clients specifically states that "Results One will not have the authority to withdraw [client] funds other than to buy or sell securities within the account." In connection with accounts managed by investment advisers, Schwab's internal procedures forbid disbursements of funds to third parties unless Schwab receives a written request from the investment advisor client.

18. As part of his scheme to misappropriate funds from his clients, Salutric typically liquidated various mutual fund shares in client accounts. In a number of instances, Salutric forged his clients' signatures on a written disbursement request to Schwab directing Schwab to disburse funds to entities related to Salutric. Salutric did so without the knowledge of his clients. For instance, one client reported that he was totally unaware of $75,000 of withdrawals from his accounts that had occurred over the last year. This client stated that he had never heard of the entities that obtained his funds.

19. In a particularly egregious example of Salutric's fraudulent scheme, Salutric misappropriated over $400,000 from a 96-year-old client who suffers from vascular dementia ("Client A"). Client A has no current memory, cannot retain information for more than 5 minutes, and resides in a nursing home. Client A's daughter has power of attorney for her mother; a copy of this power of attorney was provided to Results One when the account was opened. Salutric was aware of Client A's medical condition; he has met Client A and her daughter in person.

5

20. In June or July 2009, Salutric affirmatively misrepresented to Client A's daughter the amount of assets in her mother's account when Salutric met with her and Client A. At that meeting, Salutric and Client A's daughter discussed purchasing a home for her mother in New York where the daughter lives. Salutric and Client A's daughter discussed getting a mortgage to purchase the home and Salutric stated that there were sufficient liquid assets in the account to make a $250,000 a down payment for the home.

21. In fact, on June 1, 2009, because of Salutric's misappropriation, Client A's assets had already been reduced to $132,907. Over the next four months, Salutric misappropriated most of the remainder leaving the account with a balance of less than $10,000 by the end of October 2009.

**SALUTRIC TRANSFERRED CLIENT FUNDS TO ENTITIES RELATED TO HIM**

22. Salutric transferred approximately $1.2 million of client funds to entities with apparent ties to Salutric. For instance, Salutric transferred approximately $610,000 of client funds to a bank account for a film distribution company, Celluloid Distribution, LLC. Salutric also transferred approximately $321,000 to his church, where Salutric is the treasurer and has signatory authority over the church's bank accounts.

23. In addition, Salutric transferred $259,000 of client funds to two local restaurants. The first, located in Yorkville, Illinois, received about $45,000 of misappropriated client funds. Salutric is one of three owners of this restaurant. The second restaurant, located in Carol Stream, Illinois, received $214,000. This restaurant went out of business in 2009. One of Salutric's clients is the agent for the restaurant's corporate entity, and the owner is the brother-in-law of one of Salutric's defrauded clients.

6

24. Clients whose funds were transferred to these entities were not aware of, nor did they authorize, these transfers.

## CLIENT FUNDS WERE TRANSFERRED TO OTHER CLIENTS AS PART OF A PONZI SCHEME.

25. Salutric used most, if not all, of the remaining misappropriated client funds in a Ponzi-like fashion to pay other clients. For example, Salutric transferred $50,000 from the Schwab account of the previously mentioned elderly 96 year-old client, "Client A," to a second client, without the knowledge or consent of either client. Salutric previously misappropriated funds from this second client's account and transferred those funds to a bank account held in the name of the restaurant located in Carol Stream, Illinois.

26. In another example, in August 2007, Salutric transferred $390,000 from one client's Schwab account to a bank account held by another client. Salutric led this second client to believe that the $390,000 was coming from his own Schwab account.

27. In September 2009, Salutric transferred $75,000 from the Schwab account of one client to a bank account held in the name of a real estate partnership. When that client learned that $75,000 had been transferred from the account, he called Salutric for an explanation.

28. Salutric admitted to the client that he did not tell him about the transfer out of the account. Salutric claimed that he used the $75,000 to purchase two town homes. Salutric told the client that he would get both his $75,000 back along with a 25% profit and that the closings on the town homes would occur on December 29, 2009. Salutric did not provide this client with any documentation of the purposed real estate purchases or the addresses of the supposed properties.

29. In reality, instead of being used to purchase town homes, Salutric ultimately transferred the $75,000 to the bank account held by another of Salutric's clients in order to replace funds he had misappropriated from that client's account two years earlier.

30. The transactions listed above, and other similar transactions, indicate that Salutric has been operating a Ponzi scheme by shifting funds from one client to another.

## SALUTRIC IS DISSIPATING CLIENT FUNDS

31. In recent weeks, Salutric has been approaching clients and offering to pay money to them in an apparent attempt to deceive and lull them into not complaining about his past misappropriation and other misconduct. Client funds thus are apparently being used in effort to conceal Salutric's previous misconduct and are being used in a Ponzi-like fashion as "hush" money. Unless emergency action is taken, Salutric may attempt to further dissipate client funds by paying clients with misappropriated funds in an effort to gain "cooperation" from some of his defrauded clients.

## COUNT I

**Violations of Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5**

32. Paragraphs 1 through 31 are re-alleged and incorporated by reference as though fully set forth herein.

33. As more fully described in paragraphs 1 through 31 above, Defendant Salutric, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly: used and employed devices, schemes and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of

8

business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities.

34. Defendant Salutric knew, or were reckless in not knowing, the facts and circumstances described in paragraphs 1 through 31 above.

35. By reason of the foregoing, Defendant Salutric violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT II

**Violations of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940**

36. Paragraphs 1 through 31 are re-alleged and incorporated by reference as though fully set forth herein.

37. At all times relevant to this Complaint, and as more fully described in paragraphs 1 through 31 above, Defendant Salutric acted as an investment adviser.

38. As more fully described in paragraphs 1 through 31 above, at all times alleged in this Complaint, Defendant Salutric, while acting as an investment adviser, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, knowingly, willfully or recklessly: (i) employed devices, schemes or artifices to defraud his clients or prospective clients; and (ii) engaged in transactions, practices and courses of business which have operated as a fraud or deceit upon his clients or prospective clients.

39. By reason of the foregoing, Defendant Salutric violated Sections 206(1) and 206(2) of the Advisers Act. [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## **RELIEF REQUESTED**

**Wherefore**, the SEC respectfully requests that this Court:

**I**.

Find that Defendant Salutric committed the violations charged and alleged herein.

**II.**

Grant Orders of Preliminary and Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendant Salutric, his officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Section 10(b) [15 U.S.C. § 78j] of the Exchange Act and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder, and Sections 206(1) and (2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

**III.**

Issue an Order requiring Defendant Salutric to disgorge the ill-gotten gains that he received as a result of his wrongful conduct, including prejudgment interest.

**IV.**

With regard to Defendant Salutric violative acts, practices and courses of business set forth herein, issue an Order imposing upon Defendant Salutric appropriate civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 209(e) of the Advisers Act [15 U.S.C. §§ 80b-9(e)].

**V.**

Retain jurisdiction of this action in accordance with the principals of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**VI.**

Grant appropriate emergency relief to prevent further secretion or dissipation of client assets.

**VII**

Grant an Order for any other relief this Court deems appropriate.

Respectfully submitted,

s/ Robin Andrews
Robin Andrews, IL Bar No. 6285644
Gregory von Schaumburg, IL Bar No. 3127782
Attorneys for Plaintiff
U.S. SECURITIES AND
EXCHANGE COMMISSION
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

Dated: January 8, 2010